IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUPERIOR IRON WORKS, INC <br> 45034 Underwood Lane, Unit 100 <br> Sterling, Virginia 20166 <br><br> and <br><br> UNITED STATES f/u/b <br> SUPERIOR IRON WORKS, INC <br> 45034 Underwood Lane, Unit 100 <br> Sterling, Virginia 20166 <br><br> Plaintiffs, <br><br> v. <br><br> AMEC CONSTRUCTION <br> MANAGEMENT, INC. <br> 2200 Fletcher Avenue/6th Floor <br> Fort Lee, New Jersey 07024 <br><br> and <br><br> FACCHINA-MCGAUGHAN, LLC <br> 7101 Wisconsin Avenue <br> Bethesda, Maryland 20814 <br><br> Defendants. | * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * No. <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * <br> * |

\* \* \* \* \* \* \*

## COMPLAINT

COMES NOW, Plaintiff and Use-Plaintiff Superior Iron Works, Inc. ("Superior"), and for its Complaint against Amec Construction Management, Inc. ("Amec") and Facchina-McGaughan, LLC, ("Facchina-McGaughan"), states as follows:

## The Parties

1. Superior is a District of Columbia corporation whose principal place of business is 45034 Underwood Lane, Unit 100, Sterling, Virginia.

2. Defendant Amec is a general contracting and construction management firm, formerly known as Morse Diesel International, Inc. ("Morse Diesel"). Amec is a Delaware corporation whose principal place of business is in London, U.K.

3. Defendant Facchina-McGaughan, LLC, is a [state] construction management and general contracting firm whose principal place of business is in Bethesda, Maryland. Based on information and belief, Facchina-McGaughan is a successor-in-interest to some of the liabilities of the former Morse Diesel or has an agreement with Amec whereby Facchina-McGaughan is liable for all or part of the amounts owed to Superior and at issue in this case.

## Jurisdiction and Venue

4. This Court has jurisdiction over this case under 28 U.S.C. § 1332 because the action is between citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is proper in this Court because most of the events giving rise to the action took place in the District of Columbia.

## Factual Background

6. On or about November 8, 1996, the United States government, acting through the General Services Administration ("GSA"), entered into Contract No. GS-11P-96-MKC-0015 (the "Contract") with Amec for the refurbishment and modernization of a federal building that formerly housed the Interstate Commerce Commission/United States Customs Service ("the ICC/USCS project" or "the project"), located at 1201-1301 Constitution Avenue, N.W. in Washington, D.C.

7. In furtherance of the Contract, on or about May 5, 1997, Amec and Superior entered into a subcontract Agreement, wherein Superior agreed to furnish and install certain structural steel and miscellaneous metal fabrications for the Project (the "subcontract"). The original subcontract amount was $2,875,000.00. Through approved change orders, the subcontract amount was eventually increased to $3,079,399.00. Superior has sought additional compensation based on additional change orders and extra work that Amec directed Superior to perform but failed to pay Superior for performing.

8. Superior has also sought compensation for delays to its work, which delays were not caused by Superior. As a result of the delays, Superior's performance was extended by 178 days, causing Superior to incur damages arising from the extended performance time.

9. As the project neared completion, disputes arose between Superior and Amec. Although Superior completed all of its performance obligations in accordance with its contract and in accordance with directions from Amec, Amec at the close of the project improperly withheld funds earned by Superior for work that Superior performed. Specifically, Amec assessed and withheld from Superior funds for "liquidated damages" and also assessed backcharges against Superior's contract balance for work allegedly within Superior's contractual scope but not performed by Superior. With respect to the liquidated damages assessment, the withholding was improper because Superior performed its work diligently and any delay to the completion of the project was in no way caused by Superior's acts or omissions. With regard to the backcharges, the backcharges were improper because Superior's subcontract balance was charged for work items that were never within the scope of Superior's subcontract. The items backcharged against Superior, in fact, were new items ordered by the GSA on behalf of the tenants of the ICC/USCS Building after Superior's work was substantially complete.

10. To date, the amounts owed to Superior for its work on the project but not paid by Amec total $328,403.

11. In 2002, Superior sued Amec's sureties in this Court under the Miller Act, in an action styled as *Superior Iron Works, Inc. v. Seaboard Surety Company et al.*, D.C. Dist. No. 02-2346. ("Superior I suit").

12. On or about April 25, 2003, the parties to the Superior I suit filed a stipulation to dismiss the Superior I suit without prejudice. The stipulation was predicated on an agreement whereby Superior would allow Amec to pursue claims against the GSA through an administrative process within the GSA and before the General Services Board of Contract Appeals ("GSBCA").

13. The proceedings at the GSBCA concluded in 2006, with the GSA agreeing to pay Amec a settlement of all pending claims brought by Amec in connection with the ICC/USCS project. Amec has offered to pay Superior a small portion of its total claims of $328,403, but Superior has declined to accept that offer.

14. Amec has represented that the amount of its offer was based on an "apportionment" of subcontractor claims allegedly performed by GSA attorneys at Amec's request, and also on an alleged audit by either the Defense Contracting Auditing Agency ("DCAA") or the GSA Office of Inspector General ("OIG") that Superior has never seen.

15. Amec has also improperly attempted to charge Superior with a portion of Amec's attorney's fees and other costs associated with pursuing the claims before the GSBCA, even though Superior had its own attorneys representing Superior with respect to those proceedings.

16. Superior has fulfilled all of the conditions precedent to bringing this suit.

17. The proceedings at the GSBCA having concluded, Superior now seeks to recover the $328,403 justly due and owing under its subcontract.

## COUNT I
### (Breach of Contract -- Against Amec and Facchina-McGaughan)

18. The allegations contained in paragraphs 1 through 17 above are incorporated by reference herein as if restated in full.

19. Amec has breached the subcontract with Superior by failing to pay the amounts justly due and owing to Superior for the work performed by Superior and for the additional costs of performance that Amec has forced Superior to incur.

20. Facchina-McGaughan is also liable for all or part of the amounts due and owing to Superior under the subcontract between Superior and Amec.

**WHEREFORE**, Superior hereby prays for judgment against Amec and Facchina-McGaughan, jointly and severally, for $328,403.00, plus costs, interest, attorney fees, and any other relief that this Court deems just and proper.

Respectfully submitted,

SUPERIOR IRON WORKS, INC. by its attorneys

Herman M. Braude, Esq. (D.C. Bar No. 051326)
Michael A. Lewis, Esq. (D.C. Bar No. 479906)
Susan Van Bell, Esq. (D.C. Bar No. 439972)
BRAUDE & MARGULIES, P.C.
1200 Potomac Street, N.W.
Washington, DC 20007
202-471-5400
202-471-5404 (fax)

## JURY DEMAND

Pursuant to F.R. Civ. P 38(b), Plaintiff hereby demands a trial by jury in the above-captioned action.

_____
Susan Van Bell